IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

LBCMT 2007–C3 W. BROAD
STREET, LLC,

    Plaintiff,

v.                                                   Civil Action No. 3:12–cv–295–JAG

ERIC D. SHEPPARD,

and

PHILIP WOLMAN,

    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on the plaintiff's motion for summary judgment. (Dk. No. 28.) The plaintiff, LBCMT 2007–C3 W. Broad St., LLC, brought suit against the defendants, Eric Sheppard and Philip Wolman, for breach of a guaranty contract. The plaintiff now seeks summary judgment on the claim. The terms of the guaranty, and the defendants' violations of those terms, are clear. The Court, therefore, grants the plaintiff's motion as to liability on the guaranty claim. Because of genuine disputes of material fact, the Court denies the motion as to the amount of damages and attorneys' fees.

### I. Background

The plaintiff—a special purpose limited liability company—is a secured lender to WSG Short Pump, LLC ("WSG Short Pump").[1] WSG Short Pump has developed a retail site in the

---

[1] The plaintiff is a special purpose limited liability corporation formed by U.S. Bank to hold the indebtedness of a borrower, WSG Short Pump. A different bank initially made the loan, but

Richmond, Virginia area. The parties signed a remarkable number of loan documents, including, of course, security agreements. Pertinent here, WSG Short Pump assigned to the plaintiff ("Lender") the right to collect rent from its tenant(s). The Lender then assigned the right to collect rents back to WSG, but, in the event of a default, the agreement required WSG to forward all rental payments directly to the Lender.

In addition, Eric Sheppard and Philip Wolman executed a Guaranty of Recourse Obligations of Borrower ("Guaranty"). In pertinent part, Sheppard and Wolman personally agreed to make good for any and all losses imposed upon, incurred by, or asserted against the Lender, directly or indirectly arising out of or in connection with WSG Short Pump's misapplication or misappropriation of rents received by WSG Short Pump after the occurrence of an event of default. (Dk. No. 29, at 33.)

In 2010, WSG Short Pump missed payments it owed to the plaintiff under the Note. On January 5, 2011, LNR Partners, LLC ("LNR") (a special servicer of the loan) sent a notice of default to WSG Short Pump, and on April 25, 2011, sent a demand letter. On June 13, 2011, the plaintiff purchased WSG Short Pump's then foreclosed-on Henrico County property, subsequently selling it for $2,309,963.

The plaintiff seeks to recover rents from the guarantors—the defendants—that WSG Short Pump collected from the period of January through June 2011, but never paid to the plaintiff. The plaintiff also seeks to recover attorneys' fees per the terms of the Guaranty.

---

U.S. Bank acquired the debt through a series of endorsements. For simplicity's sake, the plaintiff will be referred to as the Lender in this opinion. Various WSG companies signed identical documents for different loans covering different properties.

## II. Standard of Review

Summary judgment becomes appropriate when the movant establishes that no genuine dispute of any material fact exists and is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After an adequate period for discovery, Rule 56(a) mandates a grant of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Fed. R. Civ. P. 56(a). The Court resolves all genuine factual disputes and inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*).

Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986). The non-movant may not rest on claims within its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks & emphasis omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

## III. Discussion

### *A. Recovery under a Guaranty*

Under Virginia law,[2] a guaranty consists of "an independent contract, by which the guarantor undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform." *McDonald v. Nat'l Ents., Inc.*, 262 Va. 184, 189, 547 S.E.2d 204, 207 (Va. 2001) (citing *B.F. Goodrich Rubber Co., Inc. v. Fisch*, 141 Va. 261, 266, 127 S.E. 187, 188 (Va. 1925)).

In order to recover for a guaranty under Virginia law, the plaintiff must show: (1) the existence and ownership of the guaranty contract; (2) the terms of the primary obligation and default on that obligation by the debtor; and (3) the nonpayment of the amount due from the guarantor under the terms of the guaranty contract. *So. Bank & Trust Co. v. Praestans One, LLC*, 2013 WL 1155526, at *3 (E.D. Va. Mar. 19, 2013) (citing *McDonald v. Nat'l Ents., Inc.*, 262 Va. at 188, 547 S.E.2d at 207).

For summary judgment disposition in a contract dispute, "[o]nly an unambiguous writing justifie[s] summary judgment, and no writing is unambiguous if 'susceptible of two reasonable interpretations.'" *Bear Brand Hosiery Co. v. Tights, Inc.*, 605 F.2d 723, 726 (4th Cir. 1979) (citing *Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965)). When making this assessment, the Court must first examine the contract's facial ambiguity. *Wells Fargo Bank, Nat. Ass'n v. Morton & Morton LLC*, 2011 WL 1306479, at *2 (E.D. Va. Apr. 1, 2011) (citing *World-Wide Rights Ltd v. Combe, Inc.*, 955 F.2d 242, 245 (4th Cir. 1992)).

---

[2] The parties do not dispute that Virginia law governs this case. The loan documents contain a choice of law provision requiring suit in the jurisdiction of the secured property—in this case, Virginia.

4

If the Court "determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *Id.*

### B. Plaintiff Has Established Its Right to Recovery of the Guaranty

#### i. The Existence and Ownership of the Guaranty Contract

The defendants do not dispute that they subjected the loan documents to a Guaranty of Recourse Obligations or that U.S. Bank owns that Guaranty. (Dk. No. 35, at 4.) Thus, the plaintiff has satisfied the first element of a prima facie case for recovery of the Guaranty—the existence and ownership of the Guaranty contract.

#### ii. Terms of the Obligation and Default on that Obligation by the Debtor

The Guaranty's terms clearly state that the defendants guaranteed any loss the plaintiff sustained as a result of WSG Short Pump's misapplication or misappropriation of rent payments after the occurrence of an event of default. An event of default occurs, under the Note, when WSG Short Pump fails to satisfy any one of a number of conditions. Relevant to this motion, an event of default occurs when WSG Short Pump does not make a payment towards the debt on the date it is due. (Dk. No. 29, Ex. 1, at § 3.) In the event of a default, all sums due to the plaintiff from WSG Short Pump under any of the loan documents become due immediately. (*Id.*) This includes the rent payments WSG Short Pump collects. (Dk. No. 29, Ex. 2, at §§ 1.1(c), 3.1.) Indeed, upon default, the terms of the Rent Assignment automatically revoke WSG Short Pump's right to receive rent payments—instead, WSG must send the payments directly to the Lender. (Dk. No. 29, Ex. 2, at § 3.1.)

The parties have stipulated that WSG Short Pump missed debt payments in late 2010. (Dk. No. 37, at ¶ 18.) The parties have also stipulated that LNR (the Lender's loan servicer) sent

WSG Short Pump a notice of default on January 5, 2011, and a demand and acceleration letter on April 25, 2011. (Dk. No. 37, at ¶¶ 18–19.) Because a missed debt payment constitutes an event of default under the loan documents (Dk. No. 29, Ex. 1, at § 3), the plaintiff possessed a right to receive the rent payments WSG Short Pump collected from the moment it missed a loan payment. Thus, contrary to the defendants' unsupported assertion, WSG Short Pump clearly defaulted.

WSG Short Pump violated the requirement to send rents to the Lender. Under the agreement, WSG Short Pump could pay property related expenses—in this case $52,644.79—from the collected rent payments. WSG, however, then misapplied or misappropriated the remainder of the rent payments, by not remitting them to the plaintiff. (Dk. No. 29, at 4–7.) The plaintiff possessed a right to receive those rent payments, and therefore has sufficiently shown that it suffered a loss during a period of default, thus triggering the Guaranty. (Dk. No. 35, Ex. 2, at §§1.1(a), 2.1, 3.1; Dk. No. 37, at ¶¶ 18–19; Dk. No. 29, Ex. 1, at 1–2.)

These facts demonstrate, as a matter of law, that the Lender has a right to payment from the guarantors, Sheppard and Wolman.

The defendants claim "that [the] Borrower did, in fact, forward the rents to the Lender and paid the expenses of the Property." (Dk. No. 35, at 7.) This statement contradicts the defendants' discovery answers. The defendants stated in their answers to interrogatories that "[the defendants] admit that rents were not directly paid to [the] [p]laintiff but were used to pay Borrower's obligations." (Dk. No. 36, at 32.) Additionally, the defendants admitted in responses to requests for admission that WSG Short Pump paid or transferred to a different WSG company some or all of the rents collected after the default. (Dk. No. 36, at 33.)

"Evidence presented in opposition to a motion for summary judgment . . . must be probative, not merely colorable and 'cannot be merely conclusory statements . . . without specific evidentiary support.'" *Law Enforcement Alliance of Am., Inc. v. USA Direct, Inc.*, 61 Fed. App'x. 822, 826 (4th Cir. 2003) (unpublished) (internal citations omitted). The defendants have failed to come forward with sufficient facts showing that WSG Short Pump did in fact forward the rent payments to the plaintiff. The defendants cannot create a dispute as to a material fact by merely contradicting their own statements. *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). Thus, no dispute of a material fact exists as to the second element.

### *iii. The Nonpayment of the Amount Due from the Guarantor under the Guaranty Contract*

Once WSG Short Pump defaulted on its loan payments, it owed the plaintiff the remainder of the rent payments after paying property-related expenses. Consequently, when WSG Short Pump did not pay the rents to the plaintiff, the defendants became liable. Although the parties agree that the property-related expenses equal $56,644.79, a question remains as to the total rental income for the property: $108,853.00 according to the Lender, or $86,056.17 according to the defendants. (Dk. No. 29, at ¶ 9; Dk. No. 35, at 12, n.1.) Regardless of the amount owed, the defendants did not pay the plaintiff their obligations under the Guaranty.

The defendants attempt to argue that after paying legitimate property expenses, no rent money remained to remit to the plaintiff. (Dk. No. 35, at 7.) The defendants, however, contradict their own defense by having stipulated that WSG Short Pump paid $56,644.79 in property related expenses and that tenants paid some amount greater than that in rent. (*See* Dk. No. 35, at 12, n.1.) The Lender, therefore, has sufficiently satisfied the third element of a prima facie claim to recover from the guarantors.

In short, the Lender has shown that the guarantors are liable.

## C. Affirmative Defenses[3]

In their response to the plaintiff's motion for summary judgment, the defendants assert two affirmative defenses: equitable estoppel and breach of the implied duty of good faith and fair dealing.

### i. Equitable Estoppel

The concept of equitable estoppel stands upon the principles of fairness: it seeks to prevent a party from having his cake and eating it too. *Guinness PLC v. Ward*, 955 F.2d 875, 899 (4th Cir. 1992). In the absence of fraud, the elements of equitable estoppel consist of: (1) representation, (2) reliance, (3) change of position, and (4) detriment. *T. v. T.*, 216 Va. 867, 872–73, 224 S.E.2d 148, 152 (Va. 1976) (citing *United States v. Fid. & Cas. Co. of New York*, 402 F.2d 893, 898 (4th Cir. 1968)). The requirements of a claim of equitable estoppel are "specific and rigorous." *Anderson v. Cox*, 977 F. Supp. 413, 417 (W.D. Va. 1997). The defendants have failed to meet the requirements.

The defendants argue that KeyBank, a loan servicing agent of the plaintiff, orally told Sheppard that WSG Short Pump must default on the loans in order to discuss loan refinancing. In essence, the defendants argue that an unidentified employee at KeyBank induced him to cause WSG Short Pump to default on its loan in order to refinance *all* of the loans. (Dk. No. 35, Ex. 1, at ¶ 5; Dk. No. 36, Ex. 1. at 20.)

WSG Short Pump defaulted in late 2010, missing loan payments for October, November, and December of that year; it also missed payments for January through June of 2011. (*See* Dk.

---

[3] The Court need not reach the issue of collateral estoppel raised by the parties in regard to *In re WSG Dulles, L.P.*, 12-11149-BFK, 2013 WL 64759 (Bankr. E.D. Va. 2013), because it finds on the merits that the evidence supports granting summary judgment for the plaintiff.

No. 35, Ex. 1, at Exs. D, 1; Dk. No. 29, at ¶ 9, at 6.) After WSG Short Pump defaulted, LNR requested that it remit the missed payments, *which it did* for October through December of 2010. (Dk. No. 35, Ex. 1, at ¶ 6.) But, despite prodding from an LNR servicer and two demand letters requesting payment, WSG Short Pump did not remit any of the other missed loan payments. (Dk. No. 35, Ex. 1, at Exs. 1, D; Dk. No. 37, at ¶¶ 18–19.)

The plaintiff seeks recovery for losses suffered from January to June of 2011. LNR requested remittance of the missed loan payments in January and February of 2011 through LNR servicer emails (Dk. No. 35, Ex. 1, at Exs. D, 1), and in January and April of 2011 through formal demand letters (Dk. No. 37, at ¶¶ 18–19; Dk. No. 35, Ex. 1, at Exs. 5, 6). Even if KeyBank's representations caused WSG Short Pump to default in late 2010, on which the Court draws no conclusion, WSG Short Pump cannot say the same for the 2011 period of default. (*See also* Dk. No. 35, Ex. 3, at 25:22–26:21.) The servicer's correspondence should have disabused Sheppard of the notion that somehow WSG Short Pump's default was a technicality with no legal consequences. As a result, the defendants' claim of equitable estoppel fails for the lack of a representation that induced WSG Short Pump to default from January to June of 2011. *See Gallimore, Inc. v. Home Indem. Co.*, 432 F. Supp. 434, 437–38 (W.D. Va. 1977) (holding representation and reliance that occurred after the loss insufficient to support a claim of equitable estoppel).

### *ii. Breach of the Implied Covenant of Good Faith and Fair Dealing*

Under Virginia law, every contract includes an implied covenant of good faith and fair dealing. *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541–42 (4th Cir. 1998). Courts will not use the implied covenant of good faith and fair dealing as the "vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist,"

however. *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (Va. 1997). "[A]lthough the duty of good faith does not prevent a party from exercising its explicit contractual *rights* [under Virginia law], a party may not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party." *SunTrust Mortg., Inc. v. Mortgages Unlimited, Inc.*, 3:11CV861-HEH, 2012 WL 1942056, at *3 (E.D. Va. May 29, 2012) (alteration and emphasis in original) (citing *Va. Vermiculite, Ltd.*, 156 F.3d at 542).

The defendants signed the Guaranty that obligated them to pay the obligations of WSG Short Pump, if WSG Short Pump defaulted under the loan. WSG Short Pump defaulted. Thus, the defendants became liable under the guaranty. There is no exercise of discretion involved. The implied covenant of good faith and fair dealing cannot change the defendants' express obligations under the Guaranty.

Moreover, this Court will not construe oral representations (allegedly made by KeyBank employees) to modify written contracts when those written contracts explicitly exclude the possibility of a non-written modification. All of the loan documents include provisions allowing only signed writings to modify contracts. (*See, e.g.*, Dk. No. 29, Ex. 3, at 3.) These provisions unambiguously bind the parties; no oral representations made to WSG Short Pump could modify the contracts, as the defendants claim. (Dk. No. 35, at 8–9.) *See United States v. Andersen*, 583 F. Supp. 1084, 1086 (W.D. Va. 1984) (upholding waiver-of-defenses language in a guaranty). For these reasons, the defendants' claim of a breach of an implied duty of good faith and fair dealing fails.

### D. Damages

Under the Guaranty, the defendants owe to the plaintiff the rent from January to June 2011, minus property-related expenses. A dispute of material fact exists, however, as to the

exact amount the defendants owe because of questions over the amount of total rental income received during that period. The plaintiff claims that from January to June 2011, WSG Short Pump received $108,000 in rental income, whereas the defendants claim that it received $86,056.17. (Dk. No. 29, at ¶ 9; Dk. No. 35, at 12, n.1.) In addition, both the plaintiff and the defendants agree that WSG Short Pump paid $52,644.79 in property-related expenses for that period, but the defendants claim that the Court should subtract an additional $1,702.05 for property insurance payments. (Dk. No. 35, at 12, n.1.)

Thus, because a dispute of material fact exists, the Court must deny the plaintiff's motion for summary judgment with respect to damages. *See, e.g., Doral Bank PR v. Fed. Home Loan Mortg. Corp.*, 2010 WL 3984667, at *9–11 (E.D. Va. Oct. 7, 2010) (finding the method of damages calculation insufficient to support a motion for summary judgment).

### E. Attorneys' Fees

Under Virginia law, "contractual provisions shifting attorneys' fees . . . are valid and enforceable." *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 730 F. Supp. 2d 513, 518 (E.D. Va. 2010). When a contract does not fix the amount of fees an attorney may recover, the "fact finder is required to determine from the evidence what are reasonable fees under the facts and circumstances of the particular case." *Mullins v. Richlands Nat. Bank*, 214 Va. 447, 449, 403 S.E.2d 334, 335 (Va. 1991). As one element of a prima facie case for attorneys' fees, the party seeking to recover those fees must establish that the fees are reasonable. *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship*, 253 Va. 93, 96, 480 S.E.2d 471, 473 (Va. 1997).

Although the loan documents and Guaranty provide for an award of attorneys' fees, the plaintiff did not present any evidence from which the Court could make a calculation about the

amount to award it. *See* Fed. R. Civ. P. 54(d)(2) ("Unless a statute or Court order provides otherwise, the motion must: . . . (iii) state the amount sought or provide a fair estimate of it."). Because of the dearth of evidence regarding the amount of hours worked, the effort expended, or the nature of the services provided, the Court denies the plaintiff's motion for summary judgment with respect to attorneys' fees. The Court will address the issue of attorneys' fees at the conclusion of the trial.

## IV. Conclusion

For the reasons described above, the Court shall grant the plaintiff's motion for summary judgment as to its Guaranty claim and deny its motion with respect to damages and attorneys' fees.

The Court will enter an appropriate order.

Date: May 6, 2013
Richmond, VA

/s/ John A. Gibney, Jr.
United States District Judge